## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

Civil Case No.:

ROBERT J. BROWN,
                    Plaintiff,

v.

COLORADO COALITION FOR THE HOMELESS,
                    Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, ROBERT J. BROWN, by and through his attorneys, Rosemary Orsini of

Berenbaum Weinshienk PC, for his Complaint and Jury Demand states:

### I.  PARTIES

1.      Plaintiff Robert J. Brown (hereinafter "Robert Brown" or "Mr. Brown") is a

United States citizen of Color (Black) and African American National Origin.  Mr. Brown is a

resident of the State of Colorado.

2.      Defendant Colorado Coalition for the Homeless (hereinafter "Colorado

Coalition") is a Colorado corporation with its principal place of business in Denver, Colorado.

### II.  JURISDICITON AND VENUE

3.      This is an action for damages arising under Title VII of the Civil Rights Act of

1964, as amended in 1991, and 42 U.S.C. §1981 among other laws.

4.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§1331 because a federal question is involved.  The Court also has jurisdiction over the Title VII

claim pursuant to 42 U.S.C. §2000e-5.  This Court has subject matter jurisdiction over the state

law claims pursuant to 28 U.S.C. §1367 because the state law claims are so related to the claims

under which the Court has jurisdiction under §1331 that they form part of the same case or

controversy.

5.     The Court has personal jurisdiction over the Defendant Colorado Coalition for the

Homeless because it has consented to jurisdiction by appointing a registered agent within the

State of Colorado for service of process.

6.     Alternatively, the Court also has personal jurisdiction over the Defendant because

it transacted business in the State of Colorado and this action arises out of those transactions.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(6) because Defendant

is a corporation with its principal place of business in the District of Colorado and the events or

omissions giving rise to the claim occurred in the District of Colorado.

### III.  GENERAL ALLEGATIONS

8.     Mr. Brown was hired as an Asset Manager with the Colorado Coalition on or

about July 21, 2008.  Mr. Brown's starting salary was $50,000 per year.

9.     Mr. Brown's job duties as Asset Manager including working internally with the

Director of Housing Development, the Director of Property Operations, Controller, the Project

and Compliance Administrator, housing development staff and property management staff, and

externally with federal, state, local and private funding sources to assure that project contractual

commitments made in funding are met.  The Asset Manager also assures that the physical assets

of the organization are being adequately maintained and makes sure that the interests of the

Colorado Coalition for the Homeless as owner of the assets are being adequately protected.

10.     On July 31, 2008, Mr. Brown completed Colorado Coalitions' "Creating Lasting Solutions through Diversity Awareness" training.

11.     Jerry Valdes was employed by Colorado Coalition as the Director of Property Operations for Renaissance Property Management, a wholly owned subsidiary of Colorado Coalition for the Homeless.

12.     Sometime on or around February 2009, Jerry Valdes told his property managers that their jobs were so easy to do; he could train a chimpanzee to do it.

13.     On February 18, 2009, a JV Managers meeting was held.  This meeting was also to introduce Robert Brown to the property management staff as the Asset Manager.  The cover page of the meeting agenda prepared by Mr. Valdes depicted an enlarged, full-page photograph of a chimpanzee.  Jerry Valdes, Stan Eilert, Vice President of Operations and Head of Human Resource and Tye Deines, Human Resources Director, were present and in charge of the meeting.  The last page of the agenda also depicted a small icon of a chimpanzee.

14.     On the morning of February 18, 2009, the very same day as Mr. Valdes' meeting, a disturbing cartoon had been published in the New York Post that depicted United States President Barack Obama as a dead chimpanzee.

15.     Despite the presence of both Mr. Deines and Mr. Eilert at the meeting, neither Mr. Deines nor Mr. Eilert said anything to Mr. Valdes during the meeting.

16.     Mr. Brown promptly complained about the chimpanzee imagery because it is a racist symbol to his supervisor, Dave Klimut, Director of Housing Development.  The Colorado Coalition did not acknowledge Mr. Brown's complaint, or apologize for the racist sentiment behind the imagery.

17.     Mr. Klimut immediately brought the imagery's racial offensiveness to the attention of Colorado Coalition.  He communicated to Vice President of Programs Louise Boris and Human Resources Director Tye Deines, that Mr. Brown had a legitimate complaint of race discrimination, the particularly offensive nature of the chimpanzee imagery, especially given the context of the New York Post cartoon, that he personally found this chimpanzee to be extraordinarily racist, and that the chimpanzee should have absolutely no association with Colorado Coalition whatsoever.

18.     Mr. Klimut informed Human Resources that Colorado Coalition must take immediate and remedial steps to address and thoroughly investigate Mr. Brown's complaint of race discrimination and to counsel, discipline, and train Mr. Valdes.

19.     Mr. Klimut was shocked when Mr. Deines told him that neither he nor Mr. Eilert found anything improper about the presentation.

20.     Colorado Coalition never took any meaningful steps to investigate, remedy or otherwise address Mr. Brown's complaint of race discrimination.  Mr. Valdes did not receive a written disciplinary action for his highly discriminatory action in displaying a chimpanzee during the meeting or hanging the same photograph in his office.  Mr. Valdes placed the same chimpanzee image on the wall of his office for all to see where it remained subsequently for a period of months.  Subsequently, Mr. Valdes angrily tore the image from the wall and threw it in Mr. Brown's direction, indicating that he had been instructed to stop displaying it.

21.     Prior to complaining about discrimination, Mr. Brown had no performance issues whatsoever.

22.     Mr. Brown and Mr. Valdes' interactions with each other before February 18, 2009, were professional and collaborative.  After February 18, 2009, Mr. Valdes behaved as

though he was Mr. Brown's supervisor, even though Mr. Brown was only to report to

Mr. Klimut.

23.     In retaliation for Mr. Brown's complaint about the racist chimpanzee image, Mr.

Valdes hyper-scrutinized Mr. Brown's work, and unduly criticized and directly or indirectly

disciplined him.  Mr. Valdes also began filing false complaints against Mr. Brown.

24.     Mr. Valdes began retaliating against Mr. Brown by demeaning him in front of

other property managers, clients, Enterprise investors, HUD officials, and CHAFA officials by

not speaking to him directly, not shaking his hand, and not acknowledging his presence.  When

Mr. Valdes and Mr. Brown ran into each other at work, Mr. Valdes was aggressive and rude.

25.     The first complaint Mr. Valdes filed involved an incident with a disabled veteran

living at the Forum apartments who was being evicted.  Mr. Brown intervened to try to keep the

veteran from being evicted.  Mr. Valdes asked Mr. Brown what color the veteran was and then

accused Mr. Brown of giving preferential treatment to African Americans, when in fact, the

veteran was white.

26.     Mr. Valdes filed another complaint against Mr. Brown because of a comment he

made concerning an inspection at the River Front Lofts.  Mr. Brown commented to Alena

Berankova, another individual attending the inspection, that the parties involved were lucky to

have a job considering the "times and financial crises."  Mr. Valdes accused Mr. Brown of being

disruptive and breaking down morale.  Mr. Brown was simply making an observation made

almost daily by news reporters of the difficult financial crises.

27.     On another occasion, Mr. Brown, Joe Cano from Enterprise, Tom Easler, the

Lowry Boulevard manager, and Jerry Valdes were at an Enterprise inspection.  Mr. Valdes

belittled Mr. Brown in front of the group.  When Mr. Brown told Mr. Valdes to stop belittling

him, Mr. Valdes proceeded to ask Mr. Brown "What do you mean by that" several times, loudly and then filed a complaint against Mr. Brown.

28.     Mr. Valdes continued to retaliate against Mr. Brown by encouraging other employees to file complaints with HR against Mr. Brown.

29.     In January 2010, Christina Wallace, the Blue Spruce property manager, filed a complaint against Mr. Brown.  The complaint alleged Mr. Brown was rude when he asked her to remove the squirrels from the club house where counselors were meeting mental health patients. Counselors would meet patients in the club house, and as the squirrels ran over the ceiling, the patients thought they were hearing things.  The counselors had advised Mr. Brown of their concern that the patients' treatment was being compromised by the squirrels.  Mr. Brown had asked Ms. Wallace several times to remove the squirrels because of the concern they were causing harm to the patients' treatment.

30.     Also in January 2010, Jay Saxe, the Forum apartments property manager, filed a complaint against Mr. Brown.  The complaint alleged Mr. Brown called Mr. Saxe a liar, when Mr. Saxe conveyed inaccurate information about a status report due to an investor.

31.     Mr. Brown went to Jerry Parvansky, the supervisor of Mr. Brown's supervisor, and told him Mr. Valdes had become increasingly rude to him and hostile after the chimpanzee incident and he believed Mr. Valdes was trying to start some type of physical violence.  Mr. Brown told Mr. Parvanksy that he was being singled out because of his race by Mr. Valdez.  Mr. Brown also told Mr. Parvansky that Mr. Valdez was making false complaints about his work performance.

32.     Mr. Parvansky did not respond to Mr. Brown's complaints of discrimination and retaliation but did say he was going to work on it internally.

33.     In February 2010, based on the retaliatory complaints and without any investigation of Mr. Brown's discrimination complaints, Mr. Parvansky issued a warning and placed Mr. Brown on probation for 60 days.  Mr. Brown responded, in writing, requesting an independent arbitrator.  Human Resources never responded.

34.     Mr. Valdes continued to demean and belittle Mr. Brown, from February 2009 to August 2010, in retaliation for his discrimination and retaliation complaints.

35.     On May 19, 2010, Mr. Valdes ran into Mr. Brown in the hallway when he stopped abruptly and intentionally turned around into Mr. Brown.  After he ran into Mr. Brown, Mr. Valdes verbally accosted Mr. Brown with derogatory language.  Mr. Brown was encouraged by coworker, William Windsor, to file a complaint with Human Resources.  No action was taken. The Colorado Coalition did not even interview Mr. Brown after he made his complaint.

36.     In July 2010, Mr. Brown received a raise for his work performance.  His salary increased to $51,500 per year.

37.     On or about August 10, 2010, Mr. Brown was called into Mr. Parvansky's office where he met with Mr. Parvansky and Tye Deines from Human Resources.  They told Mr. Brown that two employees had filed a complaint alleging he had called Mr. Valdes a racist.  Mr. Parvansky and Mr. Dines refused to tell Mr. Brown who filed the complaint.  When Mr. Brown asked about his May 19, 2010 complaint, he was told Human Resources found no merit to his complaint.

38.     On August 16, 2010, a Colorado Coalition meeting was scheduled in an effort to address the racial hostilities at Colorado Coalition.  When it was Mr. Brown's turn to speak, he handed out documents with the pictures of the chimpanzee and asked, "What did this have to do with anything that we do at Colorado Coalition housing the homeless?"  Mr. Brown explained

that since he complained about the racist chimpanzee image, he had been personally and professionally attacked by Mr. Valdes with the support of Mr. Eilert, Mr. Deines, and John Parvansky. These personal and professional attacks were retaliatory.

39.     Later that day, Mr. Parvensky, Mr. Eilert, and Mr. Deines called Mr. Klimut and asked him to attend a meeting to discuss the future of Mr. Brown's employment with Colorado Coalition. Mr. Parvansky, Mr. Eilert, and Mr. Deines told Mr. Klimut that they were terminating Mr. Brown because of his tone and demeanor at the meeting when he was restating his complaints of discrimination and retaliation. Mr. Klimut argued that Mr. Brown's complaint was valid based on the continuing and absolute failure of those in the meeting to meaningfully investigate and address Mr. Brown's complaints of discrimination and retaliation. No negative performance issues of Mr. Brown were discussed at this meeting. Mr. Eilert told Mr. Klimut that if he was not prepared to fire Mr. Brown, that Mr. Deines of Human Resources would. Mr. Klimut insisted that a second meeting be scheduled that afternoon to discuss Mr. Brown.

40.     During the afternoon meeting of August 16, 2010, Mr. Parvensky indicated that Mr. Brown had received repeated warnings concerning his behavior and that Mr. Brown should be terminated for failure to heed the warnings. Mr. Klimut suggested that Mr. Brown receive a written warning or even leave without pay as a middle ground but he was ignored.

41.     On August 17, 2010, Mr. Klimut told Mr. Brown that he was being terminated by Colorado Coalition and convinced Mr. Brown to resign his employment with Colorado Coalition in lieu of termination.

42.     Plaintiff Robert J. Brown timely filed charges of race, national origin and color discrimination and retaliation with the U.S. Equal Opportunity Commission ("EEOC").

43.     On February 15, 2012, the EEOC issued a Right to Sue letter to Plaintiff Robert Brown.

44.     Plaintiff Robert J. Brown has exhausted all administrative remedies and is filing this Complaint within 90 days of receiving the EEOC's Dismissal and Notice of Rights.

45.     Plaintiff Robert J. Brown has suffered extreme emotional distress and physical illness as manifestations of the emotional distress as a result of the discrimination, harassment and retaliation by Colorado Coalition.

46.     In addition, Plaintiff Robert J. Brown has suffered, and will continue to suffer, economic damages and losses due to the conduct of Colorado Coalition, including lost wages, lost benefits, loss of seniority, and loss of future career advancement.

**FIRST CLAIM FOR RELIEF**
C.R.S. §§24-34-306, 32-34-402
Disparate Treatment

47.     Mr. Brown incorporates by reference the allegations contained in the proceeding paragraphs of the Complaint.

48.     Mr. Brown was subjected to disparate treatment by his employer, Colorado Coalition for the Homeless, on account of race, color, and national origin.  Mr. Brown was treated differently than similarly situated Caucasian employees.  This treatment included being unduly scrutinized, subjected to discriminatory statements, false accusations, unfair subjective write-ups, unwarranted discipline, and being terminated from employment.

49.     Other workers of different race, color, and national origin than Mr. Brown were not subjected to the criticism, disparagement, unfair write-ups, and termination for the same actions as Mr. Brown.

50.     Mr. Brown was fully qualified for continued employment by Colorado Coalition.

51.     Mr. Brown suffered disparate treatment by his employer, Colorado Coalition on account of race, color and national origin.

52.     Mr. Brown has exhausted his administrative remedies and otherwise complied with all statutory prerequisites to bringing this claim.

53.     Mr. Brown suffered economic and non-economic damages as a result of disparate treatment by Colorado Coalition, including loss of earnings, loss of earnings capacity, loss of benefits, loss of future benefits, emotional distress, physical pain and suffering, medical expenses, loss of out of pocket expenses and statutory damages.

54.     Colorado Coalition violated C.R.S. §24-34-402(1)(a) by the conduct herein.

55.     Mr. Brown is entitled recover damages for the discriminatory conduct described herein pursuant to C.R.S. § 24-34-306 and the associated provisions of Parts 3 and 4 of Article 34 of Title 34, C.R.S.

### SECOND CLAIM FOR RELIEF
C.R.S. §§24-34-306, 32-34-402
Retaliation

56.     Mr. Brown incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

57.     Mr. Brown was subjected to retaliation for engaging in opposition to discrimination, in violation of public policy of the State of Colorado and C.R.S. §24-34-402(1)(e), including termination from his employment.

58.     Mr. Brown suffered economic and non-economic damages as a result of such retaliatory treatment by the Colorado Coalition, including loss of earnings, loss of earnings capacity, loss of benefits, loss of future benefits, emotional distress, physical pain and suffering, medical expenses, loss of out of pocket expenses and statutory damages.

59.     Mr. Brown is entitled to recover damages for the retaliatory conduct described herein pursuant to C.R.S. §24-34-306 and the associated provision of Parts 3 and 4 of Article 34 of Title 24, C.R.S.

60.     Alternatively, Mr. Brown is entitled to recover damages for the retaliatory conduct described herein which constitutes the common law public policy of retaliatory discharge.

### THIRD CLAIM FOR RELIEF
C.R.S. §§ 24-34-306, 24-34-402
Constructive Discharge

61.     Mr. Brown incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

62.     Mr. Brown was subjected to discrimination and retaliation because of his race as stated herein.

63.     On August 17, 2010, Mr. Klimut told Mr. Brown that he was being terminated by the Colorado Coalition and convinced Mr. Brown to resign his employment with the Colorado Coalition in lieu of termination.

64.     The discrimination and retaliation rendered Mr. Brown's working conditions so intolerable that a reasonable person in Mr. Brown's position would have felt compelled to resign.

65.     Mr. Brown suffered economic and non-economic damages as a result of such termination/constructive discharge by the Colorado Coalition, including loss of earnings, loss of earnings capacity, loss of benefits, loss of future benefits, emotional distress, physical pain and suffering, medical expenses, loss of out of pocket expenses and statutory damages.

66.     Mr. Brown has suffered damages, as stated herein, as a result of the constructive discharge.

67.     Mr. Brown is entitled to recover damages on account of the constructive discharge as set forth herein.

**FOURTH CLAIM FOR RELIEF**
Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, 2000e-5
Disparate Treatment

68.     Mr. Brown incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

69.     Mr. Brown was subjected to disparate treatment by his employer, Colorado Coalition for the Homeless, on account of race, color and national origin.

70.     Mr. Brown was subjected to disparate treatment by his employer, Colorado Coalition for the Homeless, on account of race, color and national origin.  Mr. Brown was treated differently than similarly situated Caucasian employees.  This treatment included being unduly scrutinized, subjected to discriminatory statements and treatment at meetings, false accusations, unfair subjective write-ups, unwarranted discipline and termination.

71.     Other workers of different race, color, and national origin than Mr. Brown were not subjected to the criticism, disparagement, unfair write-ups, and termination for the same actions as Mr. Brown.

72.     Colorado Coalition violated 42 U.S.C. §2000(a)(1) by the conduct described herein.

73.     Mr. Brown has exhausted his administrative remedies and otherwise complied with all statutory prerequisites to bringing this claim.

74.     Mr. Brown suffered economic and non-economic damages as a result of such disparate  treatment by the Colorado Coalition, including loss of earnings, loss of earnings capacity, loss of benefits, loss of future benefits, emotional distress, physical pain and suffering, medical expenses, loss of out of pocket expenses and statutory damages.

75.     Mr. Brown is entitled to recover damages for the discriminatory conduct described herein pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5.

76.     Mr. Brown is also entitled to recover his reasonable costs and attorneys' fees for bringing this action pursuant to 42 U.S.C. §2000e-5(k).

## FIFTH CLAIM FOR RELIEF
Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, 2000e-5
Retaliation

77.     Mr. Brown incorporates by reference the allegations contained in the preceding paragraphs of this Court.

78.     Mr. Brown was subjected to retaliation for engaging in opposition to discrimination, in violation of 42 U.S.C., §2000e-3, including termination from his employment.

79.     Mr. Brown suffered economic and non-economic damages as a result of such retaliatory treatment by the Colorado Coalition, including loss of earnings, loss of earnings capacity, loss of benefits, loss of future benefits, emotional distress, physical pain and suffering, medical expenses, loss of out of pocket expenses and statutory damages.

80.     Mr. Brown is entitled to recover damages for the retaliatory conduct described herein pursuant to 42 U.S.C. §2000e-5.

81.     Mr. Brown is also entitled to recover his reasonable costs and attorneys' fees for bringing this action pursuant to 42 U.S.C. §2000e-5(k).

## SIXTH CLAIM FOR RELIEF
Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-5
Constructive Discharge

82.     Mr. Brown incorporates by reference the allegations contained in the proceeding paragraphs of the Complaint.

83.     Mr. Brown was subjected to discrimination and retaliation because of his race as stated herein.

84.     On August 17, 2010, Mr. Klimut told Mr. Brown that he was being terminated by the Colorado Coalition and convinced Mr. Brown to resign his employment with the Colorado Coalition in lieu of termination.

85.     The discrimination and retaliation rendered Mr. Brown's working conditions so intolerable that a reasonable person in Mr. Brown's position would have felt compelled to resign.

86.     Mr. Brown suffered economic and non-economic damages as a result of such retaliatory treatment by the Colorado Coalition, including loss of earnings, loss of earnings capacity, loss of benefits, loss of future benefits, emotional distress, physical pain and suffering, medical expenses, loss of out of pocket expenses and statutory damages.

87.     Mr. Brown has suffered damages, as described herein, on account of the constructive discharge.

88.     Mr. Brown is entitled to recover damages on account of the constructive discharge, as set forth herein.

## SEVENTH CLAIM FOR RELIEF
42 U.S.C. §1981
Race Discrimination

89.     Mr. Brown incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

90.     Mr. Brown, as an African American employee, was subjected to a pattern and practice of discrimination in his terms and conditions of employment perpetrated by the Defendant Colorado Coalition for the Homeless because of his race.  In addition, the Defendants condoned a racist hostile work environment and repeatedly and knowingly subjected Mr. Brown to this environment, including a pervasive pattern of offense remarks about Plaintiff's race.  This type of treatment was so severe and pervasive that it altered the conditions of Mr. Brown's employment and had an adverse impact on Mr. Brown's working environment.  Mr. Brown has

14

suffered and will continue to suffer economic losses due to discriminatory conduct set forth above, as well as non-economic injuries, such as emotional harm.

91.     Colorado Coalition knew or should have known of the harassment and hostile environment perpetrated by management and other employees, and failed to take immediate and appropriate remedial action.  Additionally, Colorado Coalition terminated Mr. Brown based on his race–African American.  Colorado Coalition's conduct toward Mr. Brown was in violation of 42 U.S.C. §1981.  Moreover, Colorado Coalition's conduct towards Mr. Brown was malicious, willful and in gross disregard of his federally protected rights, thereby subjecting Colorado Coalition to punitive damages.

92.     Mr. Brown suffered economic and non-economic damages as a result of such discriminatory and retaliatory treatment by the Colorado Coalition, including loss of earnings, loss of earnings capacity, loss of benefits, loss of future benefits, emotional distress, physical pain and suffering, medical expenses, loss of out of pocket expenses and statutory damages.

93.     WHEREFORE, Mr. Brown prays for relief as requested herein.

## EIGHTH CLAIM FOR RELIEF
Violation of 42 U.S.C. §1981
Retaliation

94.     Mr. Brown incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

95.     Mr. Brown engaged in statutorily protected expression by opposing Colorado Coalitions unlawful employment practices as described above.

96.     Mr. Brown complained to Colorado Coalition several times after discriminatory and unfair treatment by Mr. Valdes.

97.     Rather than take appropriate corrective measures, Colorado Coalition knowingly and willfully retaliated against Mr. Brown for complaining about the discriminatory treatment. The retaliation included ultimately terminating Mr. Brown's employment.  Colorado Coalition's retaliatory conduct toward Mr. Brown was malicious, willful, and in gross disregard of his federally protected rights, thereby subjecting Colorado Coalition to punitive damages as well.

98.     Mr. Brown suffered economic and non-economic damages as a result of such retaliatory treatment by the Colorado Coalition, including loss of earnings, loss of earnings capacity, loss of benefits, loss of future benefits, emotional distress, physical pain and suffering, medical expenses, loss of out of pocket expenses and statutory damages.

99.     WHEREFORE, Mr. Brown prays for relief as requested herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert J. Brown, prays for relief as follows:

1.     Pecuniary damages, including but not limited to lost earnings, loss of benefits, loss of future earnings, and impairment of future earning capacity, and all other economic losses.

2.     Non-pecuniary damages, including but not limited to, pain and suffering, loss of enjoyment of life, injury to reputation and character and deprivation of civil rights, those for mental anguish, emotional distress, physical distress and loss of enjoyment of life;

3.     Back pay, front pay and statutory penalties and damages.

4.     Pre-judgment interest and post judgment interest as provided for by law;

5.     Attorneys' fees, costs, and expenses of this action as provided for by law; and

6.     Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), the Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 15th day of May, 2012.

Respectfully submitted,

**BERENBAUM WEINSHIENK, PC**

*Original signature on file at Berenbaum Weinshienk, PC*

 s/ *Rosemary Orsini*
Rosemary Orsini
370 Seventeenth Street, Suite 4800
Denver, Colorado 80202
Telephone: (303) 592-8305
Facsimile: (303) 629-7610

Plaintiff's Address:

9062 W. Layton Ave.
Littleton, CO  80123

17